MARTHA A. HILL et vir, Appellants, v. MAHALA EVANS, Administratrix, etc., Respondent.

Kansas City Court of Appeals, December 4, 1905.

1. ADMINISTRATION: Personal Dower: Child's Part: Statutory Construction. "The share of a child" referred to in section 2944, Revised Statutes 1899, means its share in the real estate alone and not its interest in the personalty; and so a widow taking a child's share under such statute is still entitled to her personal dower under section 107. Cases distinguished.

2. ———: Attorney's Fee: Evidence. On a review of the evidence relating to the administration of an estate of some considerable difficulty, together with the services of the administratrix's attorney, it is held that the services of the attorney were confined to proper professional duties and an allowance of four hundred dollars was reasonable.

3. ———: Loss: Care of Administratrix: Agents. An administratrix may employ agents to perform certain duties and when she employs the agent of her late husband to look after the real estate in an adjoining county, and through his assumption of authority a loss is sustained, and, when learned of, corrected as promptly and as far as possible, the administratrix is not liable, since she stands in the position of a trustee and is liable only for the want of the care and skill which prudent men exercise in the managing of their own affairs.

Appeal from Livingston Circuit Court.—*Hon. Joshua W. Alexander*, Judge.

AFFIRMED.

*Sheets & Sons* for appellants.

(1) The widow having elected to take a child's share under the statute, subject to the payment of its debts, thereby became a distributee or heir of said estate and was not entitled to the statutory allowance of $400. Griffith v. Canning, 54 Mo. 284; Chinn v. Stout, 10 Mo. 711; Newton v. Newton, 162 Mo. 186. (2) The item of $400 attorney's fees should not have been allowed; the commission of the administratrix was $350; other helpers and agents almost $250, and there was no litigation for which this charge is made, and it was for service which could have been rendered by the administratrix and for which she is allowed a commission. Jacobs v. Jacobs, 99 Mo. 436; Scudder v. Ames, 142 Mo. 210; Dausman v. Maguire, 61 Mo. App. 50. (3) The administratrix not only lost the rent of the Carroll county land for one year amounting to $350, but also the sum of $90, making a total of $440. The crops would have protected the rent, and the estate would have lost nothing had any care or attention been given the matter. There is no showing in any settlement of the loss of either of the above sums, and no reference to or explanation made of it by the administratrix. She should be charged with these items and interest thereon. Booker v. Armstrong, 93 Mo. 59; Myers v. Myers, 98 Mo. 268.

*Lewis A. Chapman* for respondent.

(1) There is no law sustaining the position of the appellants that because the respondent, the widow of William Evans, elected, under and by virtue of section 2944, Revised Statutes 1899, to take a child's share in the real estate, subject to the debts of Evans, in lieu of dower or third interest in said lands for life, not subject to the debts of said Evans, that she was not entitled to the statutory allowance of $400 provided for by section 107, Revised Statutes 1899. Evans had children living

and these same children were the children of respondent, so the only election she could make was under section 2944. The case of Griffiths v. Canning, 54 Mo. 282, cited by appellants, has no application to this case. Hasenwritter v. Hasenwritter, 77 Mo. 164; Cummings v. Cummings, 51 Mo. 261; Mowser v. Mowser, 87 Mo. 437; Cox v. Dunn, 3 Mo. App. 350; Lewis v. Costells, 17 Mo. App. 693. (2) The appellants object to the allowance of four hundred dollars paid to C. R. J. McInturff, attorney for the respondent as administratrix of the estate. The lower court evidently thought that the legal services and advice rendered by Mr. McInturff were reasonably worth the amount. Section 223, R. S. 1899; Nichols v. Reyburn, 55 Mo. App. 1; State ex rel. v. Walsh, 67 Mo. App. 348. (3) In the third point in appellants' brief they complain because the court did not charge the respondent, as administratrix account, with the sum of $350, rent claimed by them that was lost, and ninety dollars kept by the agent, Conley, agent of the administratrix. These items are not mentioned in the settlements, and where the appellants got the $350 item we do not know. The respondent did all that any prudent person could do and is not chargeable with these items. That she acted in good faith is admitted. The prevailing rule in this State is that administrators stand in the position of trustee to those interested in the estate, and are liable only for want of due care and skill, and the measure of care and skill required of them is that which prudent men exercise in the direction and management of their own affairs. Merritt v. Merritt, 62 Mo. 157; State v. Meagher, 44 Mo. 356; Foster v. Davis, 46 Mo. 268; Clyce v. Anderson, 49 Mo. 37; Fudfe v. Dunn, 57 Mo. 264; Gamble v. Gibson, 59 Mo. 585.

JOHNSON, J.—William Evans died intestate in Livingston county in 1898, leaving his widow, the defendant, and their two married daughters, the plaintiff Martha A. Hill, and Mary J. Wilhite. He left personal

property of the value of about $7,000 and a number of tracts of real estate. Shortly after his death, defendant was appointed administratrix of his estate by the probate court of Livingston county. In the discharge of her duties the administratrix made one annual settlement and thereafter, in proper time, filed her final settlement. To this plaintiff filed certain exceptions which were heard and determined by the circuit court upon appeal. Some of them were sustained and, with these, we have no concern, but others were overruled and we are besought by plaintiffs to reverse the judgment of the trial court upon them.

The first exception for our consideration relates to the allowance of $400 claimed by the widow under section 107, Revised Statutes 1899. The personal estate was insufficient by several thousand dollars to pay the allowed debts of decedent. The widow in proper time made her election, under Revised Statutes 1899, section 2944, to take in lieu of dower, a child's part in the lands whereof her husband died seized. It is claimed that in doing this she became a distributee of the personal as well as the real estate and, as such, renounced the benefit conferred upon her under section 107. There is no merit in this contention. Section 2944 provides: "When the husband shall die leaving a child or children, or other descendants, the widow, if she has a child or children by such husband living, may, in lieu of dower of the one-third part of all lands whereof her husband died or shall die seized of an estate of inheritance, to hold and enjoy during her natural life, elect to be endowed absolutely in a share of such lands equal to the share of a child of such deceased husband. The provisions of this section shall be subject to the payment of her husband's debts." The "share of a child" referred to means its share in the real estate alone, not its interest in the personalty. The bounty provided by section 107 belongs absolutely to the widow (provided she applies for it in the time prescribed in section 108) regardless of the

debts of her husband and is unaffected by the exercise of her election to take a child's portion of the real estate. [Glenn v. Gunn, 88 Mo. App. 423.]

What we have said is not at variance with the cases of Griffith v. Canning, 54 Mo. 284, and Newton v. Newton, 162 Mo. 186, relied upon by plaintiffs. They deal with an election made by the widow of a husband dying childless. The rights of the widow in such cases are controlled by the provisions of sections 2939 and 2941, which by express terms extend the effect of her election to her interest in the personal as well as the real estate belonging to her husband at the time of his death. The very fact that no words of similar import are to be found in section 2944 induces the belief that the legislative intent was to restrict the effect of an election under that section to the interest of the widow in the real estate.

Objection is made to the allowance of a fee of $400 paid to the attorney of the administratrix for services rendered during the administration, a period of about three years. In rendering his bill, the attorney did not itemize his services, but made a charge in gross. It is not intimated that he overcharged the administratrix for what he did, but it is claimed that his services were largely such as the administratrix could and should have performed herself and for which the commission allowed her under the statute is to be regarded as sufficient compensation. In other words, as she employed an agent to do things she should have done and for which she received pay in her commission, she should pay his charge for such services out of her own pocket.

At the time of his death, William Evans was a very old man and, for several years at the latter end of life, had neglected his business. He owed many debts, aggregating over $9,000. Numerous debts of various degrees of collectibility were owing to him. He owned three farms in Livingston county containing two hundred and forty acres of land in all; two in Chariton county including two hundred and forty acres; three in Carroll

with a total area of three hundred thirty-six and one-half acres; and four pieces of town property in Chillicothe, among them his residence.   He did not make a confidant of his wife in business matters and she was left with scant knowledge of his affairs.   She was inexperienced in business, and on account of her great age, frail in body, but her mind was unimpaired and, considering her disadvantages, the evidence shows she acted with energy and vigilance and generally exercised sound judgment in the discharge of what must have been to her quite onerous duties.   She enlisted the aid of her son-in-law, Mr. Wilhite, with whom, after her husband's death, she made her home, and between them they did about everything they felt competent to do.   She employed a reputable lawyer to guide her through the difficulties of her position and followed him and, when in his judgment a matter required his personal attention, permitted him to take it in hand.   There is no indication from the evidence that he abused her confidence, either in his work, the charge therefor, or in concerning himself with affairs not calling for professional knowledge and skill in their handling.   In the main, his services consisted of the giving of advice to the administratrix, drawing leases and other legal instruments, ejecting non-paying tenants, collecting doubtful demands due the estate, discovering assets, and investigating and adjusting disputed claims.   These are all services, for which, under Revised Statutes 1899, section 223, the estate should pay; and, considering the volume and character of the estate, both real and personal, all of which was in charge of the administratrix, its scattered and tangled condition, and the meagerness of the information left by the decedent concerning his assets and liabilities, we agree with the learned trial judge that the services shown by the evidence were reasonably worth the sum charged and were such as fall within the classification of the statute.

The third exception relates to an item of loss to the

estate, with which plaintiffs claim the administratrix should be charged. Owing to the distance of the Carroll county lands from defendant's home and the multitude of the other duties of her position, defendant, acting under the advice of her counsel and with the knowledge and tacit consent, at least, of her children, employed a Mr. Conley, who lived in the vicinity of the land, to take charge of it as her agent and, in that capacity, he found tenants and attended to the collection of rents. One year he experienced difficulty in procuring a tenant for one of the farms and did not succeed in renting it until sometime in the month of April. Conley agreed with this tenant to accept in payment of the rent for that year a house in Bedford, Missouri, and to give the tenant in addition to the rent the sum of $90 in money. This transaction was consummated. The tenant entered into the possession of the land. Conley paid him $90 out of other rent money he had in hand belonging to the estate and the tenant turned over to Conley the Bedford house. Shortly after this, the house burned without insurance. On account of the lateness for planting when the tenant took charge of the farm, little or nothing of value was raised that year. The tenant was insolvent and so was Conley. All that Conley did in this connection was done without authority. Defendant was not informed of anything relating to the transaction until some time after the house burned, which was too late for the renting of the land to another tenant. She consulted her attorney on the advisability of bringing suit against the agent and was counseled against such proceeding on account of the insolvency of the latter. Moreover, the agent held rent moneys collected by him for the estate and, when he found that defendant was dissatisfied with what he had done, refused to make any settlement except upon condition that his wrongful conduct be condoned. Defendant sensibly concluded to take what she could get while it was obtainable and acquiesced

perforce in the demand of the agent and settled with him accordingly. Plaintiffs say she should bear the loss of rent and money thus incurred.

It is the duty of an administrator, recognized by the statute, to employ such agents and servants as may be necessary to enable him properly to preserve and handle the estate. William Evans had Conley in his service in the same capacity as that for which defendant employed him and he had proven a faithful servant. Although plaintiffs at all times manifested an active interest in the administration of the estate, even to the extent of employing an attorney to assist them in the protection of their interest, no question was raised by them until the loss was sustained, either as to the advisability of having an agent on the ground to look after the property, or as to the ability and integrity of the one employed. This, in conjunction with the facts in evidence, moves us to say that the learned trial judge was right in his finding that defendant acted with due care and for the benefit of the estate in the employment of Conley and, from this premise, we have no hesitation in saying that she should not be held accountable for the result of his unauthorized and wrongful act. An administrator stands in the position of a trustee to those interested in the estate and is liable only for the want of due care and skill, and the measure of due care and skill is that which prudent men exercise in the direction and management of their own affairs. [Merritt v. Merritt, 62 Mo. 150; Booker v. Armstrong, 93 Mo. 49; Myers v. Myers, 98 Mo. 262.] Tested by this rule, we must hold defendant blameless for this loss.

It would unduly lengthen this opinion and serve no useful purpose to discuss the other exceptions urged. We have carefully considered them and pronounce them to be without merit. The judgment is affirmed. All concur.